UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ELRAY CHEVEZ BAKER #724177,

           Petitioner,

v.

        Case No. 1:21-cv-110

        Hon. Janet T. Neff

RANDEE REWERTS,

           Respondent.
_____/

**REPORT AND RECOMMENDATION**

This is a habeas corpus action brought under 28 U.S.C. § 2254 by a state prisoner. Petitioner Elray Chevez Baker is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility in Carson City, Michigan. Following a jury trial in the Genesee County Circuit Court, Petitioner was convicted of first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b); larceny of $200 or more but less than $1,000, Mich. Comp. Laws § 750.356(4)(a); felon in possession of a firearm, Mich. Comp. Laws 750.224f; and two counts of possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. On July 31, 2017, the trial court sentenced Petitioner as a third-offense habitual offender, Mich. Comp. Laws § 769.11, to life imprisonment without parole for the felony-murder conviction, five to ten years for the felon-in-possession conviction, and 365 days for the larceny conviction, to be served concurrently, but consecutive to, concurrent two-year terms of imprisonment for the felony-firearm convictions.

Petitioner timely filed his habeas corpus petition on February 1, 2021.

The petition raises three grounds for relief, as follows:[1]

I.   Petitioner contends [the] guilty plea was induced by and given in consideration for the prosecution's promise that the plea would include uncharged conduct.

II.  Petitioner contends trial court's decision to grant prosecution's motion to amend information was an abuse of discretion, *People v. McGee*.

III. Petitioner contends that evidence admitted into record by prosecution pertaining to petitioner's interview with police was an abuse of discretion.

(Pet., ECF No. 1 at PageID.6–9.)

Respondent has filed an answer to the petition (ECF No. 9), stating that the petition should be denied because one of the grounds is procedurally defaulted, and all grounds lack merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I recommend that the petition be denied.

## I. Factual background

The Michigan Court of Appeals set forth the background of the case as follows:

> Defendant's convictions arise from a home invasion of an occupied dwelling during the early morning hours of June 8, 2011, in the city of Flint, during which Pedro Martinez, one of the occupants of the house, was shot. According to other occupants in the house, two intruders were involved in the offense, one of whom was armed with a gun. The gunman initially confronted Pedro's daughter, Elisa Gaona, and her husband Pablo in their bedroom. According to Elisa, the gunman repeatedly tried to turn on a bedroom light for a table lamp by flicking a wall switch 5 to 10 times, but was unsuccessful. Elisa eventually turned on the light using a switch on the lamp. While the gunman was in the bedroom with Elisa and Pablo, Pedro momentarily appeared outside the bedroom door and then retreated. The gunman instructed his accomplice to look for Pedro. After the accomplice announced, "He's got a gun," both intruders ran out of the bedroom and gunshots were fired. The two intruders escaped, but Pedro was shot in the thigh. Pedro died five days later due to complications from the gunshot wound. The intruders took Elisa's purse, Pablo's wallet, and a set of keys. The police obtained a DNA sample from the light switch in the bedroom. A week or two after the offense, Elisa received her driver's license,

---

[1] Petitioner's ground I appears to be an argument relating to ground II. (ECF No. 1 at PageID.5–6.) Therefore, I will consider it as part of ground II.

which had been in her purse, in the mail. None of the items of value that were taken were ever returned.

During the summer of 2011, defendant was implicated in a series of other home invasions and robberies in Flint. He was charged in several of those cases, which were resolved in 2012 by a plea agreement whereby defendant pleaded guilty to three counts of armed robbery and one count of felony firearm, and agreed to a minimum prison sentence of 17 years for armed robbery and two years for felony-firearm. In exchange, the prosecution agreed to dismiss other specified cases and complaints, and also that defendant "shall not be prosecuted for any other HI's/A.R. during summer 2011 investigated by FPD." It is not disputed that "HI" refers to home invasions, "A.R." refers to armed robberies, and "FPD" is the Flint Police Department. At the plea hearing, the prosecutor stated that "this conviction will wrap up the Defendant's crime spree . . . during the summer of 2011," and defendant's attorney agreed that "this wraps up any and all similar type conduct . . . during the events of the summer of 2011." In taking defendant's plea, the trial court asked defendant,

> And, as has already been made reference [sic] to, your alleged crime spree during the summer of 2011, the incidents arising out of that time frame, also will not be charged; do you understand that, sir?

Defendant stated that he understood. After making a finding that defendant's plea freely and voluntarily made, the trial court sentenced defendant accordingly.

In 2016, the police connected defendant to the instant case through a DNA match to the light switch sample collected in 2011. Defendant was charged with first-degree felony murder, first-degree home invasion, armed robbery, felon in possession of a firearm, and two counts of felony-firearm. Defendant moved to dismiss the charges, arguing that they were precluded by the 2012 plea agreement. After conducting an evidentiary hearing, the trial court determined that the plea agreement only barred the prosecution from charging defendant with home invasion and armed robbery. The court dismissed those two charges, but allowed the remaining charges to remain. The prosecution then moved to amend the information to add a charge of larceny of $200 or more but less than $1,000, to serve as a predicate felony for felony-murder. The trial court granted that motion. At trial, the prosecution presented evidence that the DNA from the light switch sample matched defendant's DNA profile. In addition, Elisa identified defendant as the gunman who confronted her inside her house in June 2011. A jury convicted defendant of felony murder, larceny of $200 or more but less than $1,000, felon in possession of a firearm, and two counts of felony-firearm.

(Mich. Ct. App. Apr. 18, 2019 Op., ECF No. 10-22 at PageID.2167–68) (footnote omitted.) The

trial court sentenced Petitioner as set forth above.

On direct appeal to the Michigan Court of Appeals, Petitioner raised five issues, including the three issues set forth in his habeas petition. (ECF No. 10-22 at PageID.2208–09.) The court of appeals affirmed Petitioner's convictions in an unpublished opinion issued on April 18, 2019. (*Id.* at PageID.2167–76.)

Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, raising the same claims he had raised in the court of appeals. By order entered November 26, 2019, the Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. (Mich. S. Ct. Order, ECF No. 10-23 at PageID.2377.)

Petitioner did not file a petition for writ of certiorari to the United States Supreme Court or a motion for relief from judgment in the trial court.

## II.  AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme

4

Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)

5

(en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Analysis

#### A.  2012 Plea Agreement

In his first claim, Petitioner asserts that his 2017 convictions were barred by the 2012 plea agreement. In the trial court, Petitioner filed a motion to dismiss all of the charges brought in 2016 relating to the Martinez murder as barred by the 2012 plea agreement. Following an evidentiary hearing on the motion, the court found that the plea agreement precluded the home invasion and armed robbery counts but did not preclude prosecution for the other charges. (ECF No. 10-6, at PageID.411–14.) The court of appeals denied the appeal on this issue as follows:

> This Court applies principles of contract interpretation when interpreting a plea agreement. *People v Martinez*, 307 Mich App 641, 651-652; 861 NW2d 905 (2014). The proper interpretation of a contract, including whether a contract is ambiguous, is reviewed de novo as a question of law. *Klapp v United Ins Group Agency*, 468 Mich 459, 463; 663 NW2d 447 (2003). However, the meaning of an ambiguous contract is a question of fact, to be decided by the trier of fact. *Id.* at 469. . . .
>
> A contract is ambiguous where it is capable of conflicting interpretations. *Klapp*, 468 Mich at 467. That is, an ambiguity will be found "when [a term] is equally susceptible to more than a single meaning." *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527; 791 NW2d 724 (2010) (quotation omitted). In the context of plea agreements, contract principles [sic] so long as they serve the interests of justice, and words are given their common meanings and unambiguous contracts will be enforced as written. *See Martinez*, 307 Mich App at 651-652. Importantly, a contract is not ambiguous unless it fairly permits multiple reasonable interpretations, irrespective of how inartfully it might be drafted. *Woodington v Shokoohi*, 288 Mich App 352, 374; 792 NW2d 63 (2010). The ultimate goal of contractual interpretation, which prevails over any other consideration, is to ascertain and give effect to the intentions of the parties. *Detroit Trust Co v Manilow*, 272 Mich 211, 218; 261 NW 303 (1935). However, "unless a contrary intention appears," language is generally "read and understood in its grammatical context." *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999).

The relevant portion of the plea agreement, the "additional considerations" section, states, "Δ shall not be prosecuted for any other HI's/A.R. during summer 2011 investigated by FPD." We find nothing ambiguous about this statement. It is undisputed that, translated to full English, this provides that "defendant shall not be prosecuted for any other home invasions/armed robberies during summer 2011 investigated by the Flint Police Department." The word "shall" is unambiguously mandatory. *People v Grant*, 445 Mich 535, 542; 520 NW2d 123 (1994). The only grammatically reasonable way to understand the rest of the sentence is that "investigated by the Flint Police Department" modifies "home invasions/armed robberies during summer 2011," which in turn is what "shall not be prosecuted." *See Sun Valley Foods*, 460 Mich at 237 (discussing the last antecedent rule). The phrase "prosecuted for" clearly indicates the particular charges that shall not be pursued. We perceive nothing on the face of the agreement to suggest that it applies to any conduct other than: (1) a home invasion or armed robbery, (2) that was committed during the summer of 2011, and (3) that was investigated by the Flint Police Department. The plea agreement is therefore facially unambiguous and did not preclude prosecuting defendant for any other crimes he committed during that time period.

Nevertheless, the written plea agreement did not occur in a vacuum. As noted, at the plea hearing, the prosecutor stated that the plea deal would "wrap up" defendant's "crime spree" from the summer of 2011. Defendant's attorney, with somewhat more nuance, also stated that it would "wrap[] up any and all similar type conduct" from that time period. Defendant's response to the trial court's somewhat unclear inquiry appears to indicate that he also understood the deal to be that he would not be prosecuted for any other crimes he committed during the summer of 2011. As a consequence, we conclude that the testimony given at the plea hearing, on the record, clearly reveals a latent ambiguity in the plea agreement. *See Shay v Aldrich*, 487 Mich 648, 667-668; 790 NW2d 629 (2010). In particular, the resulting agreement is ambiguous as to whether it specifically precludes charges only for home invasion or armed robbery, or whether it more generally precludes charges for any crimes arising out of transactions involving home invasion or armed robbery. It was therefore proper for the trial court to hold an evidentiary hearing to determine the parties' intent.

At the evidentiary hearing, testimony was presented from the prosecutor from 2012, the attorney who represented defendant in 2012, and a retired Flint Police detective who had worked on several cases involving defendant in 2011 to 2012. The detective stated that defendant had been a suspect in Pedro's murder at the time, but that he never disclosed that fact to the prosecutor. The prosecutor testified that his office was aware that defendant had "a bunch" of open files and there were still other complaints pending for crimes committed in 2011. However, he denied having any knowledge that defendant was considered a suspect in a homicide case, and said he would have specifically mentioned a homicide case in the plea agreement if it was intended to be covered by the agreement. The prosecutor denied that the agreement was ever intended to cover a charge of felony murder, and stated

7

> that it was intended to encompass any other home invasions and armed robberies from the time period that had been investigated by the police.
>
> Defendant's attorney from 2012 similarly testified that he had no knowledge that defendant was potentially connected to a homicide case at the time of the agreement. Neither defendant nor the prosecutor had ever mentioned any connection to a possible murder investigation. Counsel stated that he would have added a specific reference to a murder case if he intended to have it resolved by the agreement. Defense counsel explained that he requested the "Additional considerations" provision because, based on defendant's history, he suspected that defendant may have been involved in other matters and he wanted to make sure "that all home invasions and armed robberies [were] closed up" by the plea agreement. Counsel stated "that if there were any further home invasions, armed robberies, anything that was a similar type conduct out there, that this cleans him up so he can proceed to a sentence and do his time and be done with it." This testimony is consistent with his statement at the plea hearing that the agreement "wraps up any and all *similar type conduct* during the events – during the events of the summer of 2011" (emphasis added).
>
> In light of this testimony, and the fact that none of the parties to the plea agreement mentioned or were even aware of any potential homicide case, the trial court did not clearly err by finding that the parties did not intend for the plea agreement to extend to the additional charges in this matter—for offenses other than home invasion and armed robbery. There could be no meeting of the minds that the plea agreement was intended to cover any such other charges. Additionally, the interests of justice do not support defendant's position. It does not serve the interests of justice to apply the plea agreement to a charge of felony murder that no one considered or contemplated at the time the agreement was reached, especially where defendant also did not disclose any possible homicide or request broader language. Although prosecutors are bound by unwise plea bargains, *Martinez*, 307 Mich App at 653, they are not bound by agreements they did not actually make. The trial court did not clearly err by finding that the parties never intended for the 2012 plea agreement to extend to a homicide, or indeed any crime other than home invasion or armed robbery, even if it was perpetrated during the commission of a home invasion or robbery. Accordingly, the trial court did not err by refusing to dismiss the remaining charges in this case.

(ECF No. 10-22 at PageID.2169–71 (footnote omitted).)

The Sixth Circuit has recognized that a state prosecutor's breach of a plea bargain is a violation of the federal constitution cognizable on habeas review. *Dixon v. Alexander*, 741 F.2d 121, 123 (6th Cir. 1984). The government may not openly breach a plea agreement. *See Mabry v. Johnson*, 467 U.S. 504, 509 (1984) ("[W]hen the prosecution breaches its promise with respect to

8

an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand[.]"). As the Supreme Court stated in *Mabry*, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 509 (quoting S*antobello v. New York*, 404 U.S. 257, 262 (1971)).

Plea agreements are contractual in nature. In interpreting and enforcing them, courts use traditional principles of contract law. *See Smith v. Stegall*, 385 F.3d 993, 999 (6th Cir. 2004) (citing *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991)).

> One fundamental principle of contract interpretation is that "primary importance should be placed upon the words of the contract. Unless expressed in some way in the writing, the actual intent of the parties is ineffective, except when it can be made the basis for reformation of the writing." 11 Williston on Contracts § 31:4 (4th ed. 2000). Consistent with the principle articulated by Williston, this court has held that the state will be held to the literal terms of the plea agreement.

*Id.* (citing *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990)). The content of a plea agreement and what the parties agreed to is a question of fact. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002).

While certainly a novel question, Petitioner's claim fails under the AEDPA standard because he cannot demonstrate that the court of appeals' decision was contrary to, or involved an unreasonable application of, clearly established law as determined by the Supreme Court. 28 U.S.C. § 2254(d). "Under AEDPA, if there is no 'clearly established Federal law, as determined by the Supreme Court' that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005). Petitioner cites no case from the Supreme Court that satisfies the AEDPA standard. While it is true, as indicated above, that the Supreme Court has addressed cases dealing with breach of a plea agreement by the prosecution, these cases primarily dealt with whether the prosecutor breached a plea agreement reached in the case under

9

consideration, and the remedy that should be imposed in such circumstances. *See Mabry*, 467 U.S. at 509–11; *Santobello*, 404 U.S. at 262–63. Petitioner has cited no case involving similar circumstances: where convictions in the case at hand must be vacated because of an alleged breach of a prior plea agreement. As the Supreme Court has stated, under AEDPA's "contrary to" provision, a federal habeas court may not "transpose[] [a Supreme Court holding] into a novel context." *Premo v. Moore*, 562 U.S. 115, 127 (2011). In other words, "novelty alone—at least insofar as it renders the relevant rule less than 'clearly established'—provides a reason to reject it under AEDPA." *Id.*

Apart from the absence of pertinent Supreme Court authority, it was not unreasonable for the court of appeals to conclude that, with the exception of the home invasion and armed robbery counts, the prosecution did not breach the 2012 plea agreement by bringing the 2016 charges because the unambiguous terms of that agreement did not preclude prosecution for crimes other than home invasion and armed robbery. Looking beyond its terms to resolve the ambiguity created by the court's and the parties' statements at the plea hearing, the court also reasonably concluded, based on the testimony received at the evidentiary hearing, that the parties were unaware of potential murder charges at the time of the plea hearing, and thus, could not have contemplated that the plea agreement covered any charges other than those specifically identified in the agreement. The court's factual findings on this issue are presumed correct, and Petitioner has offered no argument, let alone clear and convincing evidence, to rebut the presumption. 28 U.S.C. § 2254(e)(1).

Therefore, this ground lacks merit.

### B.   Amendment of the Information

In his second ground, Petitioner contends that the trial court abused its discretion in allowing the government to amend the information to list a count of larceny of property valued at

$200 or more but less than $1,000 as the predicate offense for the felony-murder charge, after it dismissed the home invasion and armed robbery charges as barred by the 2012 plea agreement.

The court of appeals found no abuse of discretion:

> Next, defendant argues that the trial court erred by allowing the prosecution to amend the information to add a new count of larceny of $200 or more but less than $1,000, MCL 750.356(4)(a), and to amend the felony-murder count to list that larceny offense as the predicate offense for felony murder. We disagree.
>
> MCR 6.112(H) provides that "[t]he court before, during, or after trial may permit the prosecutor to amend the information . . . unless the proposed amendment would unfairly surprise or prejudice the defendant." A trial court's decision to grant or deny a motion to amend an information is reviewed for an abuse of discretion. *People v McGee*, 258 Mich App 683, 686-687; 672 NW2d 191 (2003). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or makes an error of law." *People v Swain*, 288 Mich App 609, 628-629; 794 NW2d 92 (2010) (citations omitted).
>
> Defendant argues that the larceny charge is precluded by the 2012 plea agreement because it is a lesser included offense of robbery. Larceny could at one time have been a lesser included offense of robbery, but only larceny from the person. *People v Beach*, 429 Mich 450, 484; 418 NW2d 861 (1988). However, even that is no longer the case, and "larceny-from-the-person is no longer a necessarily included lesser offense of robbery." *People v Smith-Anthony*, 494 Mich 669, 687 n 53; 837 NW2d 415 (2013). Otherwise, "larceny is committed when one steals the property of another outside the person's presence." *People v Perkins*, 473 Mich 626, 634 n 9; 703 NW2d 448 (2005) (emphasis added). The amendment did not seek to add a charge of larceny from the person, MCL 750.357, but rather sought to charge defendant with larceny of $200 or more but less than $1,000, MCL 750.356(4)(a). A person can commit the offense of robbery by stealing property from a person regardless of the value, MCL 750.529, but the added charge required proof that defendant stole property with a specific monetary value. Thus, larceny of $200 or more but less than $1,000 is not a necessarily included lesser offense of robbery. Because the 2012 plea agreement did not cover crimes other than home invasions or armed robberies, it did not preclude the charge of larceny of $200 or more but less than $1,000.
>
> Defendant does not otherwise claim that he was surprised by the amendment. Accordingly, the trial court did not err by granting the prosecution's motion to amend to add the charge of larceny of $200 or more but less than $1,000, and allowing that charge to serve as the predicate offense for the felony-murder charge.

(ECF No. 10-22 at PageID.2171–72 (footnote omitted).)

Whether this Court would have made the same decision as the court of appeals is irrelevant. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). "[A] federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Petitioner's challenge to the trial court's decision to allow the prosecution to amend the information presented only a question of state law. (*Id.* at PageID.2235–37.) As set forth above, the trial court and the court of appeals decided the issue under state law. Whether the larceny charge was a lesser included offense of robbery—one of the offenses covered by the 2012 plea agreement—concerned an issue of state law that "is no part of a federal court's habeas review of a state conviction[, for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68. Moreover, Petitioner asserts no basis for a cognizable federal law claim in his habeas petition based on the trial court's decision to grant the prosecution's request to amend the information. Accordingly, to the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon

which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters.[2] *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Even if construed as a claim that the prosecution breached the plea agreement by bringing the larceny charge, it fails for the same reasons that the first claim fails: the absence of pertinent Supreme Court authority and the court of appeals' reasonable conclusion that the prosecution did not breach the 2012 plea agreement by bringing the larceny charge because the unambiguous terms of that agreement did not preclude prosecution for crimes other than home invasion and armed robbery. Accordingly, this claim lacks merit.

### C.  Admission of Recorded Police Interview

For his last ground, Petitioner challenges the admission into evidence of a recorded police interview. The court of appeals addressed this ground as follows:

> Defendant also argues that the introduction of his recorded police interview at trial denied him a fair trial because it infringed on his presumption of innocence. Defendant concedes that his interview was admissible under MRE 801(d)(2)(A), as a party's own statement, but he argues that the statement should have been excluded under MRE 403 because its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or its tendency to mislead the jury. We disagree. Because defendant did not object to the introduction of this evidence at trial, this issue is unpreserved. MRE 103(1)(a). We review unpreserved issues for plain error affecting a defendant's substantial rights. *Carines*, 460 Mich at 763-764. An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).
>
> Defendant argues that the police officer's questions during the interview suggested that defendant was lying or needed to prove his innocence, and thereby shifted the burden of proof and infringed on defendant's presumption of innocence. After reviewing the entire record and reviewing defendant's police interview in context, it is neither clear nor obvious that the interview infringed on defendant's right to be presumed innocent. The evidence was probative because it conveyed defendant's position with regard to the charges in this case in response to police questioning. It

---

[2] In any event, even if Petitioner had raised and exhausted a due process claim in the state courts, nothing in the record indicates that Petitioner was unfairly surprised by the amendment. *See Tague v. Richards*, 3 F.3d 1133, 1141–42 (7th Cir. 1993); *Wright v. Lockhart*, 854 F.2d 309, 312–13 (8th Cir. 1988).

13

> was not unduly prejudicial because defendant consistently maintained his innocence during the interview, despite accusations or implications that he was lying or was involved. Defendant has not shown that it was unfair or inequitable for the jury to hear both defendant's responses and the officer's questions during the interview. *See Blackston*, 481 Mich at 462. In addition, the trial court instructed the jury that it "must start with the presumption that the Defendant is innocent," that "the prosecutor must prove each element of the crime beyond a reasonable doubt," and that "[t]he Defendant is not required to prove his innocence or to do anything." The court's instructions were sufficient to alleviate defendant's concerns regarding the presumption of innocence and to protect defendant's substantial rights. Again, we presume the jurors followed their instructions. *Abraham*, 256 Mich App at 279.

(*Id.* at PageID.2175–76.)

Respondent correctly argues that this claim is procedurally defaulted. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a state procedural rule that was "'firmly established and regularly followed' at the time at which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Here, Petitioner failed to comply with the state's contemporaneous objection rule (*id.* at PageID.2175), "an adequate and

14

independent state ground for foreclosing federal review." *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011). "[A] state court's plain error analysis does not save a petitioner from procedural default. Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (citations omitted).

To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). Petitioner has not attempted to explain his failure to object during trial. Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495). This requires a petitioner to show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. Accordingly, I conclude that Petitioner's evidentiary-error claim is procedurally defaulted.

Aside from procedural default, the claim also lacks merit because federal habeas courts do not review state-court evidentiary rulings. *See Burger v. Woods*, 515 F. App'x 507, 509 (6th Cir. 2013) ("Unfortunately for Burger, second-guessing evidentiary rulings is not our job, at least not in this context. Federal habeas courts do not review state-court rulings on state-law questions."). Petitioner must show that the admission of his statements to the police violated his constitutional

rights. Petitioner fails to make this showing. As the Sixth Circuit has recognized, to obtain habeas relief based on an allegedly improper evidentiary ruling, Petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue." *Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020). In the absence of Supreme Court authority holding that the admission of recorded police interview evidence violates the Constitution, laws, or treaties of the United States, Petitioner is not entitled to habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512–13 (6th Cir. 2003). Because Petitioner has not cited such a case, he is not entitled to habeas relief.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review,

16

but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, I would conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Recommended Disposition

For the foregoing reasons, I recommend that the Court deny Petitioner's habeas petition. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court certify that an appeal would not be taken in good faith.

Dated: November 14, 2022             /s/ Sally J. Berens
                                      SALLY J. BERENS
                                      U.S. Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).